2010 Ark. App. 698

**James Louis CANNON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–1158.**

Court of Appeals of Arkansas.

Oct. 20, 2010.

Christopher Scott Nance, Newport, for appellant.

Dustin McDaniel, Atty. Gen., Nicana C. Sherman, Asst. Atty. Gen., Little Rock, for appellee.

KAREN R. BAKER, Judge.

Appellant James Louis Cannon pled guilty to criminal mischief in the first degree pursuant to Arkansas Code Annotated section 5–38–203 (Repl.2006) on August 28, 2007. He received a four-year suspended sentence. On April 17, 2009, the State filed a petition to revoke appellant's suspended sentence alleging that he violated the terms of the suspended sentence by being charged on April 3, 2009, with theft of property and three counts of criminal mischief.[1] The revocation hearing was held on July 20, 2009, and the Randolph County Circuit Court revoked appellant's suspended imposition of sentence and sentenced him to sixty months' imprisonment at the Arkansas Department of Correction. On appeal, appellant asserts that the trial court erred by admitting out-of-court statements (1) that were hearsay; and (2) that violated the Confrontation Clause. We affirm.

To revoke a suspended sentence, the trial court must find by a preponderance of the evidence that the defendant inexcusably violated a condition of that suspension. *Peterson v. State*, 81 Ark. App. 226, 100 S.W.3d 66 (2003). The State bears the burden of proof but need only prove that the defendant committed one violation of the conditions in order to sustain a revocation. *Haley v. State*, 96 Ark. App. 256, 240 S.W.3d 615 (2006). The State's burden is not as great in a revocation hearing as it is in a criminal proceeding; therefore, evidence that is insufficient

---

1. The conditions of appellant's suspended sentence required him to not violate any federal, state, or municipal law for which he could receive a sentence of incarceration. A person commits theft of property when he exercises control over the property of another so as to deprive the owner of the property, Arkansas Code Annotated section 5–36–103(a)(1) (Supp.2009), and it is punishable by imprisonment, Arkansas Code Annotated section 5–4–401 (Repl.2006).

for a criminal conviction may be sufficient for revocation. *Bedford v. State*, 96 Ark. App. 38, 237 S.W.3d 516 (2006). We do not reverse a trial court's findings on appeal unless they are clearly against the preponderance of the evidence. *Sisk v. State*, 81 Ark. App. 276, 101 S.W.3d 248 (2003). Because the determination of a preponderance of the evidence turns on questions of credibility and the weight to be given testimony, we defer to the trial court's superior position to resolve those matters. *Peterson, supra.*

Cynthia Farley testified that on the night of March 25, 2009, she parked her 2005 Dodge dually pickup[2] at approximately 10:00 p.m. in the front of her house in Pocahontas [3]and left the keys on the console. When she awoke the following morning around 8:00 a.m., the truck was gone and the corner of a new fence in her yard was damaged. Farley stated that she had not given anyone permission to take her truck.

Ann Beasley testified that on the night of March 25, 2009, she was at Rod Hall's apartment and appellant came there either late that night or in the early morning hours of March 26th. She stated that appellant indicated he had just stolen a dark blue Dodge dually truck that had the keys in it from a gas station. Beasley testified that appellant offered to sell it for $100.00 to any of the four persons present. She stated that appellant told them he had hit a car while driving in the truck. She admitted that she had been arrested at Rod Hall's apartment for drugs and that the charges were pending at the time of her testimony, but she denied being offered any plea deals by the State in exchange for her testimony. Beasley also stated that she never saw the truck.

Joey Rhone testified that someone came to his house at 3:00 a.m. on March 26, 2009, and stated that he wanted to sell a truck. He did not recognize the person and could not pick him out of the photo line-up shown to him by the police. He said that as far as he knew, Tony Schrader, who was at Rhone's shop, was the one who had talked with the man who was selling the truck.

Appellant offered two witnesses. His mother, Sandra Wilson, testified that on March 25, 2009, appellant called her asking for a ride, which she could not provide. She said that he arrived around 10:30 p.m. and spent the night on her sofa, and that in her opinion, he was [4]too drunk to have awakened during the night and gone anywhere. However, she admitted going to sleep after he arrived and sleeping through the night. Wilson testified that she had been charged with intimidating a witness, Ann Beasley, in the case. Jamie Hall, Rod Hall's daughter and appellant's girlfriend, testified that appellant had been drinking and left her house at approximately 10:00 or 10:30 p.m. on March 25th to go to his mother's house. She admitted to not seeing him again until 11:00 a.m. on March 26, 2009.

Sergeant Jesse Luftman of the Pocahontas Police Department testified that on March 26, 2009, Cynthia Farley filled out an incident report regarding the theft and he investigated. He said that the truck was found on the morning of the 26th, and that it had sustained quite a bit of damage. After he released the truck back to Farley,[3] he testified that he went to the apartment of Rod Hall to execute a search

---

**2.** She identified the truck through the State's photo exhibit, which shows that its color was very dark and that it had collision-type damage to the front end.

**3.** Sergeant Luftman testified that he lifted some fingerprints from the truck, but that the lab told him they were not suitable for comparison.

warrant for drugs. Once there, he learned there had been a hit-and-run involving a dually truck the previous night. Sergeant Luftman stated that one of the persons told him appellant had come to Hall's apartment the previous night, admitted to stealing a truck close to a convenience store, and was trying to sell it. The sergeant said that the convenience store was maybe half a block from Farley's home. He said that after Beasley told him that appellant had tried to sell the truck at Rhone's Auto Salvage, he went there and talked with Tony Schrader. Sergeant Luftman stated that he showed Schrader a photo of Farley's Dodge dually truck and that Schrader identified it as the one appellant was trying to sell for between $700 and $800. When questioned about Schrader's whereabouts, the following pertinent colloquy occurred:

PROSECUTOR: What happened when we tried to get a subpoena served on Tony Schrader?

LUFTMAN: We learned that ... nobody had seen him since Easter weekend from talking to the Lawrence County authorities and Ravenden authorities.

PROSECUTOR: What specifically do you know about his unavailability?

LUFTMAN: I've been told that his name had been brought up in an investigation and as soon as his name had been brought up there was a break-in from what I understand, at Rhone's Body Shop to where they had stole a 12 gauge shotgun.

PROSECUTOR: What else?

LUFTMAN: And a note that they referred to as a suicide note was left as well ... [b]y Tony Schrader.

PROSECUTOR: So we can't get Mr. Schrader here?

LUFTMAN: No, sir.

PROSECUTOR: Who did Mr. Schrader pick out of that photo line-up as being the person who drove this Dodge dually up there and tried to sell it to him for seven hundred dollars?

DEFENSE COUNSEL: Objection to hearsay.

COURT: Well, we are talking about an unavailable witness.

PROSECUTOR: Not only that but I would again ask Your Honor to allow hearsay based on this being a revocation of suspended imposition of sentence and the supreme court has ruled that hearsay is admissible.

COURT: Well, it's ruled it admissible under certain conditions.

PROSECUTOR: [T]he witness is totally unavailable. We couldn't get him here and he may be dead.

COURT: What is the law on unavailable witnesses?

DEFENSE COUNSEL: Back in June for the hearing, the State didn't make him available either and the State ... [doesn't] have any good testimony that puts my client at the scene so certainly they are trying to bootstrap it with hearsay testimony by quote, "an unavailable witness."

COURT: I asked what the law was on that.

PROSECUTOR: The State has to prove that he is unavailable.

COURT: Do you know what the law is on an unavailable witness and hearsay evidence?

PROSECUTOR: [H]earsay is clearly admissible in a revocation hearing, be it S.I.S. or probation.

DEFENSE COUNSEL: My client is denied his confrontation rights to cross-examine the witness about the photo line-up. This is even beyond hearsay.... I have a right to confront that witness about ... that photo line-up as well as everything else that has been alleged here.

COURT: Objection overruled.

PROSECUTOR: Who did Mr. Schrader pick out of the photo line-up?

LUFTMAN: James Cannon.

■ Appellant first argues that the trial court erred by admitting the testimony of Sergeant Luftman regarding the statements made by Tony Schrader because they were hearsay. It is well settled that the Arkansas Rules of Evidence, including the rules regarding hearsay, do not apply in revocation hearings. *Jones v. State*, 31 Ark. App. 23, 786 S.W.2d 851 (1990); Arkansas Rule of Evidence 1101(b)(3) (2010); *cf.* Arkansas Code Annotated section 5–4–310(c)(2) (Repl.2006). We find no reversible error on this point.

■ ⌊7Appellant next argues that the Confrontation Clause was violated by the testimony of Sergeant Luftman regarding what Tony Schrader told him. A defendant's right to confront the witnesses against him is found in the Sixth Amendment to the United States Constitution and in article 2, section 10 of the Arkansas Constitution. Further, a defendant's right to confront his accusers during a revocation hearing is codified in Arkansas Code Annotated section 5–4–310(c)(1) (Repl. 2006) and requires that the trial court make a finding of good cause before admitting such testimony. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

■ In *Goforth v. State*, 27 Ark. App. 150, 767 S.W.2d 537 (1989), we held that in a revocation proceeding, the trial court must balance the right to confront witnesses against the grounds asserted by the State for not requiring confrontation. The trial court must first assess the explanation offered by the State for why confrontation is undesirable or impracticable. *Id.* A second factor to be considered is the reliability of the evidence which the government offers in place of live testimony. *Id.* In this case, the trial court did not conduct the two-step analysis. The State offered, and the court did not question, the conclusory testimony that Schrader was unavailable. Sergeant Luftman testified about what other law enforcement agencies told him concerning Schrader's whereabouts and gave no specific details on efforts that had been made to serve him and by whom. Furthermore, the trial court did not make a finding that the in-court witness's testimony had some indicia of reliability. This requirement does not impugn the officer's integrity, or suggest that his testimony should be excluded, or that it is insufficient to support a revocation; rather, it is necessary to permit hearsay testimony that prevents the ⌊8right of confrontation. *Id.* Therefore, we agree that appellant's right of confrontation was violated by the admission of Schrader's statements through the testimony of Sergeant Luftman. Though we find the trial court erred in admitting Schrader's statement, we find that error harmless on the facts of this case. A Confrontation Clause error may be a harmless error. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Jones v. State*, 31 Ark. App. 23, 786 S.W.2d 851 (1990). Whether such an error is harmless in a particular case depends upon several factors: the importance of the witness' testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted; and, the overall strength of the prosecution's case. *Jones, supra* (quoting *Van Arsdall, supra* ).

Schrader's statements to Sergeant Luftman were not needed to establish the case against appellant. The four witnesses

gave collective testimony that showed, by a preponderance of the evidence, appellant stole the dually truck. Beasley's testimony was critical. She stated that appellant admitted to stealing a dark blue dually truck from a location that Sergeant Luftman stated was near Farley's home and that he was trying to sell it. She also stated that appellant said the keys were in the truck when he took it, and that he had been in an accident afterward. Sergeant Luftman said Beasley told him that appellant had gone to Rhone's Auto Salvage to try to sell the truck. Schrader's statements were merely cumulative and corroborated by other evidence.

Excluding Schrader's statements, there was a preponderance of evidence that appellant |9violated a term of his suspended sentence. Because the trial court's error was harmless, we affirm.

Affirmed.

VAUGHT, C.J., and GLOVER, J., agree.